

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE

CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Dec 22, 2016

SUSAN L. CARLSON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CITY OF SNOQUALMIE, a municipal corporation, | ) ) ) ) | |
| Respondent, | ) ) | No. 91534-2 |
| v. | ) ) | En Banc |
| KING COUNTY EXECUTIVE DOW CONSTANTINE, an individual, in his official capacity; KING COUNTY ASSESSOR LLOYD HARA, an individual, in his official capacity; and KING COUNTY, | ) ) ) ) ) ) | Filed |
| Defendants, | ) ) | |
| and | ) ) | |
| THE STATE OF WASHINGTON DEPARTMENT OF REVENUE, | ) ) ) | |
| Appellant. | ) ) ) | |

OWENS, J. — Article VII of the Washington Constitution imposes a set of

requirements on taxes for the protection of the taxpayers; however, not all

governmental charges are "taxes" that are subject to those requirements. At issue in

this case is whether a certain governmental charge imposed on Indian tribes is a tax. After the legislature amended a statute to expand the types of tribal property that are eligible for a property tax exemption, the Muckleshoot Indian Tribe applied for and received an exemption on its Salish Lodge property pursuant to the amendment. As required by statute, the tribe negotiated and paid an amount to the county in lieu of taxes. Today, we are asked to consider the constitutionality of this payment in lieu of tax (PILT). We find that the PILT is not a tax at all but, rather, a charge that tribes pay to compensate municipalities for public services provided to the exempt property. Since the PILT is not a tax, it is not subject to article VII's tax requirements and thus we reverse the trial court and uphold the constitutionality of the provision.

## FACTS

The Washington Constitution gives the legislature the authority to exempt property from taxation. CONST. art. VII, § 1. In 2004, the Washington Legislature added tribal property to the list of tax-exempt property. LAWS OF 2004, ch. 236, § 1. Tribal property is exempt from state taxation if the property is owned by a recognized tribe and used for "'essential government services,'" including operations like "tribal administration, public facilities, fire, police, public health, education, sewer, water, environmental and land use, transportation, and utility services." *Id.* § 1(2).

In 2014, the legislature passed Engrossed Substitute House Bill (ESHB) 1287, which expanded qualifying exempt property and created a payment in lieu of property

2

tax for some of it. LAWS OF 2014, ch. 207. To do so, it expanded the qualifying list of "essential government services" to include "economic development," thereby expanding the types of properties eligible for the tax exemption. LAWS OF 2014, ch. 207, § 5(3)(b); RCW 84.36.010(3)(b). "Economic development" is defined as "commercial activities, including those that facilitate the creation or retention of businesses or jobs, or that improve the standard of living or economic health of tribal communities." LAWS OF 2014, ch. 207, § 5(3)(c).

If a tribe takes advantage of the property tax exemption, it does not pay property taxes, but the statute still requires the tribe to make some payment. Where tribes lease the property to a third party, the private lessee must pay a leasehold excise tax essentially for the "privilege of occupying or using" the land. RCW 82.29A.030. If the land is not leased, then the tribe must make a "payment in lieu of leasehold excise taxes." RCW 82.29A.055(1). This PILT is owed to the county if (1) the property is used exclusively for economic development, (2) there is no taxable leasehold interest in the tax-exempt property, (3) the property is not on the tribe's reservation, and (4) the property is not otherwise exempt from taxation under federal law. *Id.* The amount of the PILT is to be determined through good faith negotiation between the tribe and the county in which the property is located. RCW 82.29A.055(2). If they cannot agree, the Department of Revenue will determine the

PILT amount, which cannot exceed the leasehold excise tax amount that would be due if the land were leased to a third party. *Id.*

PILTs are nothing new. In 1976, the federal government established the payments in lieu of taxes (referred to as PILT or PILOT) program, whereby the government pays sums of money to state governments or localities where its property sits, in spite of its tax-exempt status. *See* 31 U.S.C. §§ 6901-6907. The purpose for PILT payments was to mitigate the burden on state governments created by the tax-exempt land that still requires public services from the state. As one report explained, "Federal lands cannot be taxed but may create a demand for services such as fire protection, police cooperation, or longer roads to skirt the federal property." M. LYNNE CORN, CONG. RESEARCH SERV., RL31392, PILT (PAYMENTS IN LIEU OF TAXES): SOMEWHAT SIMPLIFIED, "Summary" (2015), https://www.fas.org/sgp/crs/misc/RL31392.pdf [http://perma.cc/4P9R-CGUC]. For instance, federal land in the state of Washington is some 12 million acres of mostly wildlife and forestland, representing about one-quarter of the state's total acreage. The federal government ameliorates the impact of these tax-exempt lands by paying PILTs to the State for the various state public services needed to support these lands. Washington also has PILT programs for property owned by other governmental agencies, such as the Washington State Department of Fish and Wildlife and the

Washington State Department of Natural Resources. *See, e.g.*, RCW 77.12.201; RCW 79.71.130.

Various Washington tribes took advantage of the 2014 amendment expanding the off-reservation tribal property exemption for around 190 properties. One of those properties is the Salish Lodge, an off-reservation hotel and spa in the city of Snoqualmie and King County, owned by the Muckleshoot Indian Tribe. Pursuant to the 2014 amendment, the tribe applied for and received a property tax exemption on the Salish Lodge as a property used for "economic development." Clerk's Papers at 416-34. The tribe negotiated a PILT payment with King County and agreed to pay 25 percent of the property taxes it paid in 2014.

The city challenged the constitutionality of ESHB 1287. It contended that the Salish Lodge would generate about $93,500 in property tax revenue to the city, which would be roughly 1.6 percent of the city's total property tax levy. The city stated in its complaint that the exemption of the lodge created a tax shift to its taxpayers (raising their individual tax liability due to the loss in overall revenue) and also raised the city's property tax levy rate. Furthermore, the city points to the tribe's planned development expansion of the Salish Lodge, which could generate an additional $600,000 of property tax revenue—however, due to the expanded property tax exemption of ESHB 1287, the city would not realize it. The city challenged the PILT as an unconstitutional property tax, arguing that it violates the uniformity clause and

the antisurrender clause, and that it is an improper delegation of the legislature's tax power. CONST. art. VII, §§ 1, 9. The trial court granted partial summary judgment in favor of the city, finding that (1) the city has standing to challenge the constitutionality of ESHB 1287 and (2) the PILT is a property tax that violates article VII's uniformity requirement and antisurrender clause, and thus is unconstitutional.[1] The department appealed directly to this court, and we retained the case for review.

Three amicus curiae briefs were filed in this case. The Muckleshoot Indian Tribe filed a brief in support of upholding the PILT. The Master Builders Association of King and Snohomish Counties and the Washington State Association of Municipal Attorneys both filed briefs in support of the city's contention that the PILT is an unconstitutional tax.

### ISSUES

1. Does the city of Snoqualmie have standing to challenge the constitutionality of the PILT?

2. Is the PILT an unconstitutional tax?

---

[1] The city made other claims relating to the Public Records Act (ch. 42.56 RCW), which are still pending before the King County Superior Court. This court's commissioner stayed the superior court's decision pending the resolution of this appeal.

ANALYSIS

*1. The City of Snoqualmie Has Standing To Pursue Its Constitutional Claims*

The city of Snoqualmie has standing to challenge the PILT, both on its own behalf and in the form of representative standing on behalf of its residents. As explained below, we find that the city has direct standing under the more liberal standing requirements we apply when a case involves an issue of public importance. Separately, the city also has representative standing to bring the lawsuit on behalf of its citizens. Either suffices to grant the city standing in this case. We review the legal question of standing de novo. *In re Estate of Becker*, 177 Wn.2d 242, 246, 298 P.3d 720 (2013).

> *a. The City Has Direct Standing To Challenge the Statute under Our More Liberal Standing Requirements for Cases of Public Importance*

Typically, a party has direct standing when it seeks to protect interests that are within the "'zone of interests'" regulated by the challenged statute and where the party suffered an injury in fact. *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 802, 83 P.3d 419 (2004) (internal quotation marks omitted) (quoting *Save a Valuable Env't v. City of Bothell*, 89 Wn.2d 862, 866, 576 P.2d 401 (1978)).[2] While it is clear to us that the city has suffered an injury by losing the tax revenue generated by the now exempt tribal property, it is a closer call whether the

---

[2] Although the department references justiciability in its briefing to this court, it does not appear to raise it as a separate issue and instead focuses on standing only. Thus, we focus on the standing challenge.

city's interests are within the zone of interests regulated by the challenged statute. However, we have held that "[s]tanding is not an insurmountable barrier" to a city challenging the constitutionality of a statute. *City of Seattle v. State*, 103 Wn.2d 663, 668, 694 P.2d 641 (1985). Indeed, we have applied standing requirements more liberally where an issue is of "serious public importance." *Id.*

Here, the department even concedes the substantial importance of this case, stating, "The Department recognizes that this case raises important constitutional questions, the resolution of which will have a broad impact on the administration of property taxes." Br. of Appellant at 23. However, it argues the importance should not mean that we should apply standing requirements more liberally. On the contrary, our case law directs us to do just that. *See City of Seattle*, 103 Wn.2d at 668; *Wash. Nat. Gas Co. v. Pub. Util. Dist. No. 1 of Snohomish County*, 77 Wn.2d 94, 96, 459 P.2d 633 (1969) (finding that where a controversy's "outcome will have a direct bearing on the commerce, finance, labor, industry or agriculture generally, questions of standing to maintain an action should be given less rigid and more liberal answer").

The issue of whether this PILT is constitutional will impact Indian tribes throughout the state. As the Muckleshoot Indian Tribe stated in its amicus brief, several other tribes will be directly affected by an invalidation of the exemption and accompanying PILT. *See* Amicus Curiae Br. of Muckleshoot Indian Tribe at 1. We also recognize that the tax implications surrounding this case might broadly impact

the legislature's actions concerning the imposition of future PILTs. Therefore, since this issue concerns a matter of great public importance as it pertains to Washington's tribes and our tax system, we find that the city has standing to challenge the constitutionality of the PILT. Alternatively, the city has representative standing on behalf of its residents, which is discussed below.

### b. The City Has Representative Standing

In addition, municipalities may have standing to raise constitutional issues on behalf of their citizens in a representative capacity. *Grant County*, 150 Wn.2d at 803. Any property tax exemption will slightly increase the property tax rate of other taxable property because an exemption reduces the overall taxable property base. *See* WASH. SENATE WAYS & MEANS COMM., A LEGISLATIVE GUIDE TO WASHINGTON STATE PROPERTY TAXES 4 (2016), http://leg.wa.gov/Senate/ Committees/WM/Documents/Publications/2016/2016%20Property%20Tax%20Guide %20v9Jan8_website.pdf [http://perma.cc/BJ9J-ZRJB]. This is called "tax shift," and the nonexempt individuals must pay higher taxes to compensate for the lost revenue. *Id.* Here, the taxpayers have been subjected to a tax shift and the PILT cannot compensate for the total loss. Since the taxpayers have suffered an injury from the exemption and the PILT, we find that the city has representative standing to challenge the PILT.

2. *The Statute Does Not Violate the Washington Constitution's Tax Requirements Because the PILT Is Not a Tax*

It is within the legislature's power to declare property exempt from taxation. CONST. art. VII, § 1. Thus, the legislature's amendment expanding the types of tribal property that qualify for a property tax exemption is not at issue. The issue we must decide is whether the PILT that accompanies the expanded exemption is constitutional under article VII. Article VII requires that taxes conform to certain standards. The city challenges the constitutionality of the PILT on three separate grounds under article VII. First, the city argues that it violates the uniformity clause, which requires classes of property to be taxed uniformly. *Id.* Second, the city argues that the statute is an improper delegation of the legislature's taxing authority. CONST. art. VII, § 9. Third, the city argues that the statute violates the antisurrender clause, which prohibits the legislature from surrendering its taxing power. CONST. art. VII, § 1.

In order for these three constitutional requirements to apply to the PILT, the PILT must be a "tax." "It is beyond dispute that article VII, section 1 applies only to taxes. Anything other than a tax is beyond the provision's scope." *Dean v. Lehman*, 143 Wn.2d 12, 26, 18 P.3d 523 (2001). Thus, if the PILT is a tax, it must conform to the requirements of article VII. If it is not a tax, then the tax requirements do not apply to it. We explain below that the PILT is not a tax.

10

*The PILT Is Not a Tax*

As explained above, the threshold question in this case is whether the PILT is a tax. However, both parties frame the question as whether the PILT is a tax *or a regulatory fee*. This is understandable since much of our prior case law in this area dealt with whether certain fees were actually hidden taxes, and thus our analysis was designed to distinguish between those two categories of payments. However, some payments to the government are neither taxes nor regulatory fees. As we explain below, that is the case here.

"Not all demands for payment made by a governmental body are taxes." *Hillis Homes, Inc. v. Snohomish County*, 97 Wn.2d 804, 809, 650 P.2d 193 (1982). This court has defined "tax" as

> an enforced contribution of money, assessed or charged by authority of sovereign government for the benefit of the state or the legal taxing authorities. It is not a debt or contract in the ordinary sense, but it is an exaction in the strictest sense of the word.

*State ex rel. City of Seattle v. Dep't of Pub. Utils.*, 33 Wn.2d 896, 902, 207 P.2d 712 (1949). In *Hillis Homes*, we were asked to decide whether certain "development fees" should actually be characterized as taxes. 97 Wn.2d at 809. To make that determination, we questioned whether the fees were regulatory instead of purely fiscal. *Id.* To answer such questions, we designed a three-factor test to distinguish between taxes and regulatory fees in *Covell v. City of Seattle*, 127 Wn.2d 874, 879, 905 P.2d 324 (1995). We have applied the three-factor *Covell* test to several

11

government charges. *See, e.g., Cedar River Water & Sewer Dist. v. King County*, 178 Wn.2d 763, 808, 315 P.3d 1065 (2013) (credit enhancement charge); *Arborwood Idaho, LLC v. City of Kennewick*, 151 Wn.2d 359, 371, 89 P.3d 217 (2004) (ambulance charge); *Okeson v. City of Seattle*, 150 Wn.2d 540, 553, 78 P.3d 1279 (2003) (streetlight charge).

This test has been useful as a tool to discover whether certain charges are actually taxes that have been disguised as fees. *See Cedar River*, 178 Wn.2d at 808. However, we find that in some instances, the test is too limited because it was not designed to account for the full spectrum of other government charges—some of which will be neither taxes nor regulatory fees. *See* Hugh D. Spitzer, *Taxes vs. Fees: A Curious Confusion*, 38 GONZ. L. REV. 335, 352 (2002/03) (explaining that the *Covell* test's two-category approach does not "adequately describe[] the full range of governmental charges").

As we have previously pointed out, "municipalities may charge fees that are not purely regulatory in nature." *See Branson v. Port of Seattle*, 152 Wn.2d 862, 874 n.5, 101 P.3d 67 (2004) (citing Spitzer, *supra*, at 343-49). Regulatory fees are only one subset of user charge, which is a broad term that describes other types of charges such as commodity charges, burden offset charges, and special assessments. Spitzer, *supra*, at 343-51. These various types of fees illustrate why a test that only determines whether a charge is a tax or a regulatory fee is too limited. Just because a

charge is not a tax does not always mean that it is a regulatory fee. Thus, we take this opportunity to clarify that the two-category dichotomy of governmental charges from the *Covell* test is not always practical. At times, the critical inquiry will not be labeling the charge, but merely determining whether a charge is a tax. That is the case here, where the key issue is not whether the PILT is some kind of fee, but whether the PILT is a tax (and therefore subject to the constitution's taxation requirements). Thus, we analyze below not whether the PILT is a fee or a tax, but only whether the PILT is a tax.

Given that we are not determining whether this charge is a tax or a fee, the original *Covell* factors are not entirely helpful. Nonetheless, the principles underlying the *Covell* factors help us answer the question presented. As we have done previously, we can apply a broader version of the *Covell* factors in our analysis. *See Lane v. City of Seattle*, 164 Wn.2d 875, 882, 194 P.3d 977 (2008). In *Lane*, we summarized the factors as "the purpose of the cost, where the money raised is spent, and whether people pay the cost because they use the service." *Id.* For cases such as this one, the *Covell* factors can be helpful when applied broadly, as they were in *Lane*. Here, we apply those more generalized factors to determine whether the PILT is a tax or not.

First, we look at the purpose of the charge, *id.*, which supports finding that the PILT is not a tax. We have found that where a charge's purpose is to "alleviat[e] a

13

burden to which they contribute," then the charge is more likely not a tax. *Arborwood Idaho*, 151 Wn.2d at 371. Here, the PILT's purpose is to allow the tribe to alleviate a burden to which it contributes. The PILT is meant to offset the burden created by the tax exemption, in order to compensate the municipality for the services the tribal exempt land requires. Although we have said that where the purpose of a charge is to raise revenue, it is a tax, *see Covell*, 127 Wn.2d at 879, we must also acknowledge that all governmental charges are generally imposed to raise revenue. Thus, that aspect is not dispositive. Since the purpose of the PILT is to alleviate a burden, this factor weighs against finding that the PILT is a tax.

The second factor considers where the money raised is spent. *Lane*, 164 Wn.2d at 882. Overall, this factor supports finding that the PILT is not a tax because although the money is deposited into a general fund like taxes are, its value is accounted for by the particular services required. Previously, we have found that a charge is less likely to be a tax if it is deposited into a special fund for a particular purpose. *See id.* at 883. However, we have held that the funds need not be directly allocated to a particular service in order to not be a tax. *Dean*, 143 Wn.2d at 27-28. Although the PILT is not directly allocated to a particular special fund or service, it is essentially a reimbursement, or at least a prospective payment, for municipal services rendered. Therefore, although the PILT is distributed to the city's general fund, it is

unlike a tax, as it is used to offset or reimburse the cost of municipal services provided to the tribal land.

Finally, the third factor considers whether there is a relationship between the charge and the service. *Lane*, 164 Wn.2d at 882. This factor also supports finding that the PILT is not a tax. While *Covell* required a "direct" relationship to find the charge was not a tax, 127 Wn.2d at 879, our cases that have applied the factors more broadly have simply looked at "whether people pay the cost because they use the service." *Lane*, 164 Wn.2d at 882. Here, the PILT is paid because of the municipal services the land receives. This is evidenced by the negotiation process between the tribe and the county, which allows for flexibility and accounts for the unique service requirements of each piece of tribal land. Although the PILT is not a direct reimbursement to the municipality for services received—such as receiving a bill for a service like a forest fire on the land—it is preemptive and is intended to cover costs that are likely to arise. Under the broad interpretation, we find that the PILT is related to the services received on the land. Thus, the third factor supports finding that the PILT is not a tax. Consequently, the three factors support a finding that the PILT is not a tax. Instead, the purpose of the PILT is to compensate the local government for services provided to the land, as evidenced by the negotiation process between the tribe and the county to determine the amount of the PILT.

15

We also note that practically speaking, the PILT is simply not a tax because of the legislature's own language and construction of the PILT. If it were a tax, then the legislature would not provide a tax exemption. A PILT by its very nature is a payment *in lieu of* a tax. Its very reason for being is an understanding that while certain property is tax exempt, it still creates a burden that justifies the property owner's payment of some funds to cover that burden.

Here, the legislature decided to expand the type of tribal property that would receive a tax exemption for the benefit of this state's recognized tribes. The legislature's purpose for the amendments in expanding what tribal property qualifies as tax exempt was expressly laid out in the statute:

> It is the legislature's specific public policy objective to create jobs and improve the economic health of tribal communities. It is the legislature's intent to exempt property used by federally recognized Indian tribes for economic development purposes, in order to achieve these policy objectives.

LAWS OF 2014, ch. 207, § 1(2). The legislature intended to bolster tribal communities by allowing more tribal property to receive the benefit of exemption. The PILT, as explained above, is used to provide some compensation for the burden the increase in tax exempt land might place on cities. The PILT was simply not intended to be a tax. If it were, then the legislature would not have provided for an exemption and a PILT simultaneously. Consequently, we hold that the PILT is not a tax. Since it is not a tax, it is not subject to article VII's tax requirements and our inquiry ends.

16

Accordingly, we reverse the trial court's decision to strike down ESHB 1287 as unconstitutional.

## CONCLUSION

We hold that the PILT is not a tax because payment is tied to compensating the municipality for public services the land might require, in lieu of paying a property tax or leasehold excise tax. Since the PILT is not a tax, the tax requirements of article VII do not apply to it. Accordingly, we reverse.

*City of Snoqualmie v. King County, et al.*
No. 91534-2

_____
Owens, J.

WE CONCUR:

_____
Madsen, C.J.

_____
Johnson, J.

_____
Fairhurst, J.

_____
Stephens, J.

_____
González, J.

_____
Yu, J.

18

No. 91534-2

WIGGINS, J. (concurring in result)—I agree with the majority that the city of Snoqualmie (City) has standing to pursue these claims. Majority at 6-7. I also agree that the Muckleshoot Indian Tribe's payment in lieu of tax (PILT) is not subject to article VII of the Washington Constitution. Majority at 16. However, I do not agree that the PILT is not a tax. Rather, I would hold that, while not a property tax, the PILT is an excise tax, a determination that ultimately does not change the outcome of the majority's opinion. Therefore, I concur in the majority's result but decline to join in the majority's reasoning.

I take issue with the majority's analysis of the third *Covell*[1] factor—"whether there is a direct relationship between the fee charged and the service received by those who pay the fee or between the fee charged and the burden produced by the fee payer." *Arborwood Idaho, LLC v. City of Kennewick*, 151 Wn.2d 359, 372, 89 P.3d 217 (2004). For this factor, the majority concludes that "the PILT is paid because of the municipal services the land receives" and because the PILT is "preemptive and is intended to cover costs that are likely to arise . . . we find that the PILT is related to the services received on the land." Majority at 14-15. However, the majority fails to

---

[1] *Covell v. City of Seattle*, 127 Wn.2d 874, 905 P.2d 324 (1995).

distinguish the PILT's relationship to government services from the relationship that a general property tax has to government services, beyond the amount charged by the State for the PILT—the very issue presented in this case: whether the PILT is a tax subject to article VII's uniformity requirements.

Both the PILT and the property tax compensate the government for governmental services. *See, e.g.,* RCW 82.29A.010 (recognizing that certain properties "receive substantial benefits from governmental services provided by units of government" and requiring a leasehold excise tax as a result); WASH. ST. DEP'T OF REVENUE, HOMEOWNER'S GUIDE TO PROPERTY TAX 1 (2016) ("[The property tax] continues to be the most important revenue source for public schools, fire protection, libraries, and parks and recreation."), http://dor.wa.gov/docs/pubs/prop_tax/ homeown.pdf [http://perma.cc/2Q3N-E2NU]. However, RCW 82.29A.055(2) allows a tribe to negotiate a lower amount than a general property tax or leasehold excise tax to pay for these services—the PILT. Because we require property taxes to be uniform, we cannot reason backward and say that because a different amount is being charged by the PILT, even though it is for the same services, this somehow transforms the charge into a fee and not a tax.

It is true that we do not require that "the charge be individualized as to the actual benefit received or burden imposed by the payer" to characterize the charge as a fee versus a tax. *Dean v. Lehman*, 143 Wn.2d 12, 28, 18 P.3d 523 (2001). However, there still must be a direct relationship between the fee charged and the services received and the burden produced by the fee payer. *Id.* In the present case, even if a tribe fails

2

to pay the PILT, the tribal property will still receive governmental services. This is likewise the case for individuals who fail to pay their property taxes; such individuals still receive the benefit of government services. Therefore, there is precisely the same relationship between the PILT and the governmental services received as there is between property taxes paid and the services those taxes go to provide.

This scenario is different from a true fee scheme. For example, in a hypothetical water district, a price is calculated, similar to the PILT, according to the estimated burden an individual may create by drawing water from the district. *See, e.g.,* RCW 57.08.005(11). Yet, we do not label the water district charge a fee merely because the charge is based on a practical estimate of what burden on the district an individual may cause. Instead, we call the water district charge a fee because there is a direct relationship between the charges an individual pays and the service received from the water district: water. If an individual stops paying water district fees, the water district no longer provides the service; the district shuts off access to the water. In such a case, there is a direct relationship between the charge and the service provided. As a result, such a charge is appropriately characterized as a fee, rather than a tax.

In the present case, there is no direct relationship between the "actual benefit received or burden imposed" for the PILT to be classified as not a tax. Since the tribal property receives governmental services regardless of the PILT, as is the case with property tax, and since the only discernable difference between the PILT and the property tax is the name and amount charged, I would classify it as a tax rather than a fee.

3

Furthermore, I do not find persuasive the majority's reasoning that "the PILT is simply not a tax because of the legislature's own language and construction of the PILT." Majority at 15. Courts have never been persuaded on a constitutional question regarding the propriety of taxation merely by the legislature's labeling. *See, e.g., Nat'l Fed'n of Indep. Bus. v. Sebelius*, __ U.S.__, 132 S. Ct. 2566, 2595, 183 L. Ed. 2d 450 (2012) (noting that a governmental charge's constitutionality "was not controlled by Congress's choice of label" (citation omitted)); *United States v. Sotelo*, 436 U.S. 268, 275, 98 S. Ct. 1795, 56 L. Ed. 2d 275 (1978) ("That the funds due are referred to as a 'penalty' . . . does not alter their essential character as taxes."); *Nelson v. Sears, Roebuck & Co.*, 312 U.S. 359, 363, 61 S. Ct. 586, 85 L. Ed. 888 (1941) ("In passing on the constitutionality of a tax law 'we are concerned only with its practical operation, not its definition or the precise form of descriptive words which may be applied to it.'" (quoting *Lawrence v. State Tax Comm'n*, 286 U.S. 276, 280, 52 S. Ct. 556, 76 L. Ed. 2d 1102 (1932))); *Covell*, 127 Wn.2d at 886 ("[T]he characterization of charges by the governmental entity imposing them is not dispositive. Rather, the characterization of the fees turns on a determination of the primary purpose of the fees as derived from the language of the authorizing and implementing legislation.").

With this in mind, I would conclude the PILT is an excise tax, rather than a property tax. We have established a two-pronged test for determining whether a charge is a property tax or an excise tax:

> [A]n assessment is a valid excise tax if (1) the obligation to pay an excise tax is based upon the voluntary action of the person taxed in performing the act, enjoying the privilege, or engaging in the occupation which is the

4

subject of the excise tax, and (2) the element of absolute and unavoidable demand is lacking.

*Arborwood*, 151 Wn.2d at 367. We stated the difference between a property tax and excise tax alternatively as follows:

> If a tax is imposed on the value of the property, it may be a property tax. If levied upon the privilege of doing business, it is an excise tax. A tax for the beneficial use of property as distinguished from a tax on property itself has long been established law.

*High Tide Seafoods v. State*, 106 Wn.2d 695, 699-700, 725 P.2d 411 (1986) (citations omitted). In the present case, RCW 82.29A.055(1)(a) imposes a PILT when "[t]he tax exempt property is used exclusively for economic development." The same property would not be subject to the PILT if not used for commercial purposes. As such, the PILT lacks the element of "absolute and unavoidable demand" of property taxes. *Arborwood*, 151 Wn.2d at 367. Consequently, the PILT is an excise rather than a property tax. Therefore, the PILT, while certainly a tax, is not subject to the uniformity requirements of article VII, section 1. *See High Tide Seafoods*, 106 Wn.2d at 700.

I concur in the majority's result only.

Wiggins, J.

Gordon McCloud, J.