# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| KITTITAS COUNTY, | No. 52329-9-II |
| Appellant, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF TRANSPORTATION, | PUBLISHED OPINION |
| Respondent. | |

WORSWICK, J. — Kittitas County brought a declaratory judgment action to require the Department of Transportation (Department) to pay an assessment for noxious weed control efforts in the county. Both parties moved for summary judgment, disputing, among other things, the type of fee this assessment is. The superior court granted the Department's motion for summary judgment dismissal and denied the County's motion. The County appeals.[1]

We hold that a weed assessment is a special assessment and that the County lacks the explicit authority to impose the weed assessments against the Department under chapters 17.04 RCW[2] and 17.10 RCW.[3] Consequently, we affirm.

---

[1] We also accepted two amicus curiae briefs filed in this case in support of the County's position: (1) the Washington State Association of Counties and (2) the Kittitas County Farm Bureau, Washington State Farm Bureau, and the Washington Cattlemen's Association.

[2] Chapter 17.04 RCW authorizes weed districts and codifies their authority and obligations.

[3] Chapter 17.10 RCW authorizes weed control boards, and establishes procedures for responding to noxious weeds.

FACTS

Noxious weeds[4] interfere with native biodiversity, threaten agriculture, impede industry, and endanger human health. To combat these evils, chapter 17.10 RCW, created a state noxious weed control board. RCW 17.10.030. This board maintains a state list of noxious weeds. WAC 16-750-005, -011, -015. Legislation also authorizes the creation of county noxious weed districts and county noxious weed control boards. RCW 17.04.010; RCW 17.10.020.

A.    *Kittitas County Weed Districts—Chapter 17.04 RCW*

Weed districts were created to prevent, destroy, or exterminate noxious weeds. RCW 17.04.010. Weed districts hire inspectors who are empowered to adopt rules to this effect, to carry out these rules, and to inspect lands for noxious weeds. RCW 17.04.150. To fund weed districts, district directors annually determine the district's budget and "classify the property therein in proportion to the benefits to be derived from the operations of the district . . . and shall levy assessments to be collected with the general taxes of the county." RCW 17.04.240.

The County has five weed districts. Each district is responsible for noxious weed control within its boundaries. However, all five districts entered into a contract with the County such that the Kittitas County Noxious Weed Control Board actually carries out the districts' duties as well as its own duties.

---

[4] A noxious weed is "a plant that when established is highly destructive, competitive, or difficult to control by cultural or chemical practices." RCW 17.10.010(1). Noxious weeds are classified into class A, B, or C, depending on their priority for eradication. WAC 16-750-005, -011, -015.

B.      *Kittitas County Noxious Weed Control Board—Chapter 17.10 RCW*

County noxious weed control boards exist to limit the economic loss and adverse effects of noxious weeds on Washington's resources. RCW 17.10.007. Chapter 17.10 RCW provides two ways to fund county noxious weed control boards. First, a county can "appropriate money from the county general fund." RCW 17.10.240(1)(b). Second, a "county legislative authority may, in lieu of a tax, levy an assessment against the land." RCW 17.10.240(1)(a). To levy this assessment against land, a county noxious weed control board categorizes lands into classes based on the benefit received, and then assesses an amount based on the land's classification. RCW 17.10.240(1)(a).[5] However, if a class of land does not receive any benefits from noxious weed control, then the board cannot levy an assessment. RCW 17.10.240(1)(a).

Here, the Board administers the County's noxious weed control program. The Board maintains the County-specific noxious weed list and weed control regulations. The Board also oversees staff who inspect lands, offers technical assistance and education to landowners, and develops programs to assist landowners in achieving compliance with noxious weed statutes.[6] These statutes impose three duties upon property owners to control the spread of noxious weeds: (1) eliminate all class A noxious weeds, (2) control and prevent the spread of all class B noxious weeds listed for control in that region, and (3) control and prevent the spread of all class B and C noxious weeds listed on the county weed list as local priorities. RCW 17.10.140.

---

[5] These classes include, but are not limited to, "dry lands, range lands, irrigated lands, nonuse lands, forestlands, [and] federal lands." RCW 17.10.240(1)(a).

[6] Additionally, if a landowner fails to control noxious weeds on their property, the Board can control the noxious weeds at the landowner's expense. RCW 17.10.170. However, this exercise of power is not at issue in this case.

C.      *Kittitas County Weed Assessments*

Depending on the location of a parcel of land, that land is subject to either a district or a Board weed assessment. Here, each weed district levies a flat amount per landowner or per parcel.[7] The assessments for weed districts 1 through 5 range between $10.50 and $35.00 per year.

The Board also imposes weed assessments. Regarding Board weed assessments, the county commissioners adopt land classifications and assessment amounts under RCW 17.10.240. The County classifies land as forestland, incorporated lands, and all other lands. These three classifications are assessed at either a per parcel minimum amount or a per acre amount, whichever amount was higher.

The County treasurer collects the weed assessments on behalf of the weed districts and the Board. Land owners receive property tax statements that include the weed assessment. In the past, the County levied, and the Department paid, the weed assessment on Department-owned lands.

D.      *Department Weed Control*

As owners of state land, state agencies are specifically required (1) to control noxious weeds on their lands and cooperate with the county noxious weed boards, (2) comply with chapter 17.10, regardless of noxious weed control efforts on adjacent lands, and (3) replace noxious weeds with native forage plants when conducting a planned project. RCW 17.10.145.

---

[7] The County resolutions enacting the assessment rates for each district are not in the appellate record. Presumably, these resolutions creating the district assessments were pursuant to chapter 17.04 RCW.

No. 52329-9-II

In Kittitas County, the Department's employees operate its weed removal program. Every year, the Department works with the County to set priorities and to plan the treatment of noxious weeds. In 2017, the Department recorded approximately 1,400 hours of labor treating 940 acres for weed control in Kittitas County. In 2017, the Department's noxious weed efforts in Kittitas County totaled $115,780.

Not every county levies weed assessments against the Department. In 2017, Kittitas County levied $388.72 in weed assessments against the Department. In 2018, this amount was $375.60. In an effort to be consistent across the state, the Department stopped paying all weed assessments in 2017, claiming that the weed assessments could not be levied against it.

E.    *Procedural History*

The County filed a declaratory judgment action in Kittitas County Superior Court to compel the Department to pay the assessment. Venue was transferred to Thurston County, and the parties filed cross motions for summary judgment.

At summary judgment, the County argued that the plain language of chapters 17.04 and 17.10 RCW created a funding mechanism of rates and charges, exercised through the police powers. The Department argued that it did not have to pay the weed assessments because they are special assessments. It argued that special assessments must be explicitly authorized and can only be levied against land that receives a special benefit. It claimed that neither exists here. The County argued in reply that RCW 17.04.240 and RCW 17.10.240 create a payment in lieu of taxes (PILT).

The trial court granted the Department's motion for summary judgment dismissal and denied the County's motion for summary judgment. The County appeals.

5

ANALYSIS

I. LEGAL PRINCIPLES

A.    *Standard of Review*

We review motions for summary judgment de novo. *Okeson v. City of Seattle*, 150 Wn.2d 540, 548-49, 78 P.3d 1279 (2003). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). Here, there are no issues of material fact. Instead, the parties disagree on the statutory scheme and funding mechanism of chapters 17.04 and 17.10 RCW, which are issues of statutory construction.

We review issues of statutory construction de novo. *Cent. Puget Sound Reg'l Transit Auth. v. WR-SRI 120th N. LLC*, 191 Wn.2d 223, 233, 422 P.3d 891 (2018). We interpret statutes to give effect to the legislature's intent. *Cherry v. Municipality of Metro. Seattle*, 116 Wn.2d 794, 799, 808 P.2d 746 (1991). In construing a statute, we may look to the statute's legislative history, context, related provisions, amendments, and the statutory scheme as a whole. *State v. Evergreen Freedom Found.*, 192 Wn.2d 782, 789, 432 P.3d 805 (2019); *Cent. Puget Sound Reg'l Transit Auth.*, 191 Wn.2d at 234. Each word in a statute is to be given meaning. *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 452, 210 P.3d 297 (2009). Whenever possible, we do not interpret a statute to render portions meaningless or superfluous. *HomeStreet*, 166 Wn.2d at 452.

B.    *Noxious Weed Control under Chapter 17.10 RCW*

The purpose of noxious weed control is to limit economic loss and other adverse effects of noxious weeds on this state's resources. RCW 17.10.007. The legislature intended this

chapter to be liberally construed, and that the statute be limited only by specific provisions of the chapter, or other state or federal law. RCW 17.10.007.

Originally enacted in 1969, the legislature substantially amended chapter 17.10 RCW in 1997. LAWS OF 1997, ch.353, §§ 1-36. The Washington State Noxious Weed Control Board requested a legislative update to the chapter that was ultimately enacted. Regarding the county board funding provisions in RCW 17.10.240(1), the 1997 update removed the word "special" from two provisions in the following manner: (1) "Control of weeds is a ~~special~~ benefit to the lands within any such section," and (2) "PROVIDED, That if no ~~special~~ benefits ~~should be~~ are found to accrue to a class of land, a zero assessment may be levied." LAWS OF 1997, ch.353, §27.

The Washington State Noxious Weed Control Board explained this change in a memorandum accompanying its requested legislative update. It states:

> The state weed law requires that assessments can only by [sic] levied for a particular category of land when weed control would be a "special benefit" to those lands. The term "special" can refer to a specific type of assessment that is not intended in this section. This confusion has generated conflicts between county legislative authorities and county weed boards over the nature of these assessments and their collection. The term "special" will be eliminated from the assessment funding section wherever a "special benefit" is referred to. Eliminating this term would leave intact the need to determine the benefit to weed control on a specific type of land while removing confusion and uncertainty over the type of assessment levied. (RCW 17.10.240)

Clerk's Papers (CP) at 13.

C.    *Related Public Lands Statutes*

A number of statutes create specific funding obligations for noxious weed control on state owned properties. RCW 77.12.203(1) provides for payment of an amount equal to the weed assessment amount, on behalf of the Department of Fish and Wildlife, that would have

been due if the land was privately owned. This statute goes on to specify that "[t]he county must distribute the amount received under this section for weed control to the appropriate weed district." RCW 77.12.203(4).

Additionally, RCW 79.71.130 provides that the State, on behalf of the Department of Natural Resources, renders PILTs to counties for the amount of real property taxes the State would have owed if it were a private landowner. Further, it states that the State will provide "an additional amount equal to the amount of weed control assessment that would be due if such lands were privately owned." RCW 79.71.130. RCW 79.70.130 provides the same payment in lieu of district weed assessments for natural area preserves. RCW 79.155.140 also provides for this payment to weed districts for community forest trusts.

## II. FUNDING MECHANISMS

The County makes several arguments as to why the Department is required to pay the weed assessment. The County argues that the "assessment" is actually a rate or charge permitted by its police powers. And because it is a rate, these weed assessments were properly levied against the Department.

The Department argues that, although the statute may provide for weed assessments against property owners, these assessments cannot be levied against state owned lands because they are "special assessments" requiring express statutory authority and special benefits to the assessed lands. Br. of Resp't at 15. We agree with the Department and hold that the weed assessments are special assessments.

Our constitution grants counties the power to "make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." WASH.

CONST. art. XI, §11. These police powers are extensive. *Teter v. Clark County*, 104 Wn.2d 227, 233-34, 704 P.2d 1171 (1985). A county's police powers may authorize improvements necessary for health, safety, and welfare of the people. *Teter*, 104 Wn.2d at 233-34.

The police powers do not, however, include the power to tax. A municipality's power to tax exists only through a grant of legislative authority. *City of Seattle v. Rogers Clothing for Men, Inc.*, 114 Wn.2d 213, 221, 787 P.2d 39 (1990). And municipalities cannot tax the property of the State. WASH. CONST. art. VII, §1. But municipalities may create and levy a variety of different types of fees within their jurisdictions without implicating the taxing power. *City of Snoqualmie v. Constantine*, 187 Wn.2d 289, 299-300, 386 P.3d 279 (2016).

The broad category of "fees" contains a spectrum of governmental fees, including burden offset charges and special assessments. *Snoqualmie*, 187 Wn.2d at 300 (citing Hugh D. Spitzer, *Taxes vs. Fees: A Curious Confusion*, 38 GONZ. L. REV. 335, 343-51 (2002/03)). Different types of fees are levied in various manners and are subject to different statutory requirements. As a general rule, courts "look beyond a charge's official designation and analyze its core nature by focusing on its purpose, design and function in the real world." *Samis Land Co. v. City of Soap Lake*, 143 Wn.2d 798, 806, 23 P.3d 477 (2001).

Here, the parties dispute where weed assessments fall on the spectrum of fees. Because the statutory requirements for these weed assessments are dependent on the type of fee they are, we first examine the various funding mechanisms. We then determine which type of funding mechanism chapters 17.04 and 17.10 RCW created.

A.    *Special Assessments*

Special assessments provide "for the construction of local improvements that are appurtenant to specific land and bring a benefit substantially more intense than is yielded to the rest of the municipality." *Heavens v. King County Rural Library Dist.*, 66 Wn.2d 558, 563, 404 P.2d 453 (1965). According to Washington's constitution, special assessments allocate the cost of certain public improvements that increase the value of property to the owner of that property. WASH. CONST. art. VII, §9. A special assessment may be levied only against property which is specially benefitted by the project. *Teter*, 104 Wn.2d at 230. To levy a special assessment against state owned lands (1) there must be express authority authorizing the special assessment, and (2) the state owned land must receive a special benefit. RCW 79.44.003-004, .010; *In re Appeal of State*, 60 Wn.2d 380, 381, 374 P.2d 171 (1962).

A "special benefit" is an increase in a property's fair market value attributable to the local improvement. *Doolittle v. City of Everett*, 114 Wn.2d 88, 103, 786 P.2d 253 (1990). The special benefit must be actual, physical, and material. *Heavens*, 66 Wn.2d at 563. A special benefit is not limited to permanent capital improvements. *Rogers Clothing*, 114 Wn.2d at 224. In other words, a special assessment is "compensation paid by the property owner for the improved value of his land." *Heavens*, 66 Wn.2d at 564. Without a special benefit, there can be no special assessment. *Heavens*, 66 Wn.2d at 564.

Examples of special assessments include fees for business improvement districts, *Rogers Clothing*, 114 Wn.2d at 227; drainage districts, *Cory v. Nethery*, 19 Wn.2d 326, 327, 142 P.2d 488 (1943); local improvements, *Heavens*, 66 Wn.2d at 559; and mosquito districts, RCW 17.28.255.

Similar to 17.04 RCW, chapter 17.28 creates mosquito control districts to eliminate mosquitoes and their breeding areas. As one method to fund mosquito control districts, RCW 17.28.255 states that a district "shall classify the property therein in proportion to the benefits to be derived from the operations of the district," and according to the classifications, the mosquito control district will apportion an assessment amount upon lands within the district. These assessments are collected with the general taxes of the county. RCW 17.28.255. An Attorney General's Office (AGO) opinion concluded that RCW 17.28.255 created a special assessment because the amount of the assessment is imposed in proportion to the benefit received by the land. 2018 Op. Att'y Gen. No. 1.

B.      *Rates—Burden Offset Charges*

Rates include burden offset charges. *Teter*, 104 Wn.2d at 230-31. Burden offset charges compensate the municipality or county for removing a negative impact to which the payor contributed. *Snoqualmie*, 187 Wn.2d at 300-01. Burden offset charges include sewer, garbage, and storm water rates. *Teter*, 104 Wn.2d at 234; RCW 35.21.152; RCW 35.67.190. The power to impose rates and charges may be inferred from the authority to provide such services. *Hillis Homes, Inc. v. Pub. Util. Dist. No. 1*, 105 Wn.2d 288, 298, 714 P.2d 1163 (1986). Levying rates is an exercise of police powers. *Petstel, Inc. v. King County*, 77 Wn.2d 144, 152-53, 459 P.2d 937 (1969). When a county exercises its police power, we do not conduct a special benefits analysis. *Teter*, 104 Wn.2d at 231.

III. STATUTORY CONSTRUCTION

Before construing the funding mechanisms in chapters 17.04 and 17.10 RCW, we address what law applies when determining whether the weed assessment is a rate or a special

assessment. Although there is little case law to guide our determination of the type of fee, courts are often asked to determine whether a certain charge is a tax or a "regulatory fee." *See, e.g.*, *Covell v. City of Seattle*, 127 Wn.2d 874, 879, 905 P.2d 324 (1995), *abrogated on other grounds by Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019). When determining whether a charge is a tax or some other funding mechanism, this court uses the three factors from *Covell*, 127 Wn.2d at 879; *see Snoqualmie*, 187 Wn.2d at 300. These factors are (1) the purpose of the charge, (2) where the money raised is spent, and (3) the relationship between the tax and the service provided. *Snoqualmie*, 187 Wn.2d at 301-02. Determining the type of fee, however, is a different inquiry than determining whether a charge is a fee or a tax.

Here, the Department's brief employs a test set forth in an attorney general opinion. 1989 Op. Att'y Gen. No. 18. This attorney general opinion test examines (1) the words the legislature used to characterize the revenue system; (2) the nature of the statutory scheme as a whole; and (3) the basis on which the assessment or charge is imposed. 1989 Op. Att'y Gen. No. 18, at 10. Stated another way, the attorney general opinion test examines (1) the plain language of the statute, (2) one canon of statutory construction, and (3) the authority upon which the charge is founded. Attorney general opinions are entitled to considerable weight, but the opinions are not binding on this court. *Skagit County Pub. Hosp. Dist. No. 304 v. Skagit County Pub. Hosp. Dist. No. 1*, 177 Wn.2d 718, 725, 305 P.3d 1079 (2013). We give attorney general opinions less deference regarding issues of statutory construction. *Skagit County Pub. Hosp. Dist. No. 304*, 177 Wn.2d at 725. This AGO test leaves out important rules of statutory construction—namely legislative history—as well as the *Samis Land* rule which requires us to consider a charge's purpose, design, and function. 143 Wn.2d at 806. We decline to adopt the

AGO test, and instead use canons of statutory interpretation to determine the funding mechanisms for chapters 17.04 and 17.10 RCW.

We interpret statutes to give effect to the legislature's intent. *Cherry*, 116 Wn.2d at 799. In construing a statute, we may look to the statute's legislative history, context, related provisions, amendments, and the statutory scheme as a whole. *Cent. Puget Sound Reg'l Transit Auth.*, 191 Wn.2d at 234; *Evergreen Freedom Found.*, 192 Wn.2d at 789. In addition, we are to "look beyond a charge's official designation and analyze its core nature by focusing on its purpose, design and function in the real world." *Samis Land*, 143 Wn.2d at 806.

A.    *RCW 17.10.240 Creates a Special Assessment*

RCW 17.10.240 establishes the funding mechanism for a weed assessment. A "county legislative authority may, in lieu of a tax, levy an assessment against the land." RCW 17.10.240(1)(a). To levy this assessment, a county noxious weed control board categorizes lands into classes in relation to the benefit the lands receive from noxious weed control, and assesses a uniform rate based on the land's classification. RCW 17.10.240(1)(a). These classes include, but are not limited to, "dry lands, range lands, irrigated lands, nonuse lands, forestlands, [and] federal lands." RCW 17.10.240(1)(a). However, if a class of land does not receive any benefits from noxious weed control, then the board cannot levy an assessment. RCW 17.10.240(1)(a).

Special assessments require property owners to reimburse the municipality for the improved value of their lands that resulted from substantial special benefit. *Heavens*, 66 Wn.2d at 564. The stated purpose of chapter 17.10 RCW "is to limit economic loss and adverse effects to Washington's agricultural, natural, and human resources due to the presence and spread of noxious weeds on all terrestrial and aquatic areas in the state." RCW 17.10.007. Thus, RCW

13

17.10.240 recognizes that noxious weed control is "a benefit to the lands" within the serviced area.

Here, the revenue from the weed assessments pays for maintaining the County-specific noxious weed list, promulgating weed control regulations, inspecting lands, educating landowners, and developing programs to assist landowners in achieving compliance with noxious weed laws. These activities materially benefit the land receiving these services.

The weed assessment is analogous to mosquito control district special assessment. The mosquito control districts "shall classify the property therein in proportion to the benefits to be derived from the operations of the district," and according to the classifications, mosquito control districts will apportion an assessment amount upon lands within the district. RCW 17.28.255. These special assessments fund the districts' efforts to eliminate mosquitos and their breeding areas. RCW 17.28.255. Similarly here, the weed assessments fund noxious weed control efforts and are assessed on categories of land according to the benefit received by the lands. RCW 17.10.240. The weed assessments are special assessments.

The County argues that the legislative intent expressed in the 1997 amendment process support the conclusion that the weed assessment is a rate. In amending RCW 17.10.240, the legislature removed the word "special" as a modifier for the term "benefit." LAWS OF 1997, ch. 353, §27. "Special" was removed to avoid confusion with "special benefits" related to special assessments. But, this legislative history does not mean that the weed assessment is a rate. We "look beyond a charge's official designation and analyze its core nature by focusing on its purpose, design and function in the real world." *Samis Land*, 143 Wn.2d at 806.

Although there is some evidence that the weed assessment could be classified as a rate, the purpose, design, and function of the weed assessment is that of a special assessment. The purpose of the weed assessment is to compensate a noxious weed control board for the services provided to specific lands benefitting from that board's noxious weed control efforts. The weed assessment is designed to be proportional to the benefit received by the assessed land. The weed assessment functions as "compensation paid by the property owner for the improved value of his land." *Heavens*, 66 Wn.2d at 564. We hold that the weed assessment in RCW 17.10.240 is a special assessment.

B.       *RCW 17.04.240 Also Creates a Special Assessment*

When determining levies on property within a weed district, weed district directors must

> determine the amount of money necessary to carry on the operations of the district and shall classify the property therein in proportion to the benefits to be derived from the operations of the district and in accordance with such classification shall prorate the cost so determined and shall levy assessments to be collected with the general taxes of the county.

RCW 17.04.240. These assessments are then placed on the general tax roll, and are collected with the general taxes. RCW 17.04.245.

Weed districts were created to prevent, destroy, or exterminate noxious weeds. RCW 17.04.010. Weed districts classify land in proportion to the benefits received by that land from the noxious weed control efforts. The district weed assessments cover the costs promulgating weed control regulations, inspecting lands, and giving landowners notice of noxious weed control directives. RCW 17.04.150.

Here, the weed assessment directly relates to the weed control services the lands receive. The weed assessment compensates a noxious weed district board for the services provided to

specific lands benefitting from that district's noxious weed control efforts, is proportional to the benefit received by the assessed land, and functions as compensation for the improved value of the assessed land. The weed assessment in RCW 17.04.240 is a special assessment.

RCW 17.04.180 supports this conclusion. It states, "Whenever any state lands are within any weed district, the county treasurer shall certify annually and forward to the appropriate state agency for payment a statement showing the amount of the tax to which the lands would be liable if they were in private ownership." RCW 17.04.180. This statute explicitly acknowledges that state owned lands are not subject to the weed assessment. A weed district does not assess the State directly. RCW 17.04.180. Rather, the county treasurer requests an amount from the state equal to the cost of the noxious weed services that benefited state owned lands. RCW 17.04.180.

Additionally, certain public lands statutes provide for the payment of the amount of a weed assessment that would have been due if the land were privately owned on behalf of the Department of Fish and Wildlife, the Department of Natural Resources, natural area preserves, and community forest trusts. RCW 77.12.203; RCW 79.71.130; RCW 79.70.130; RCW 79.155.140. Whenever possible, we do not interpret a statute to render portions meaningless or superfluous. *HomeStreet*, 166 Wn.2d at 452. Interpreting the statute to mean that the weed assessment is a rate would render the Natural Resources, community forest trust, natural area preserves, and Fish and Wildlife provisions meaningless because a weed district would have possessed the power to assess a rate directly on these lands. Statutes authorizing payment of an amount equal to a weed assessment when these state owned lands were subject to the actual

16

weed assessment would be nonsensical.  Both RCW 17.10.240 and 17.04.240 create special assessments.[8]

### IV.  WEED ASSESSMENTS AS APPLIED TO THE DEPARTMENT

The Department argues that the weed assessment, as a special assessment, cannot be levied against it because both the common law and chapter 79.44 RCW require (1) clear and express authority to assess state owned land, and (2) the state owned land must receive a special benefit.  The Department argues that neither RCW 17.04.240 nor RCW 17.10.240 expressly mention the State, and that the Department lands do not receive a special benefit.  We hold that neither chapter 17.04 nor 17.10 RCW explicitly authorize the weed assessments against the Department, thus, the County cannot levy them against the Department.

To levy a special assessment against state owned lands, (1) there must be express authority authorizing the special assessment, and (2) the state owned land must receive a special benefit.  RCW 79.44.003-004, .010; *Appeal of State*, 60 Wn.2d at 381.  Whether land is specially benefited is a question of fact.  *Appeal of State*, 60 Wn.2d at 382.

RCW 17.10.240 does not explicitly mention state owned lands regarding the weed assessment.  Although this chapter includes a section specifically requiring state agencies to conduct their own noxious weed control, RCW 17.10.145, that section does not authorize weed

---

[8] Additionally, the County argues that RCW 17.10.240 and RCW 17.04.180 create a PILT.  The purpose of a PILT is to offset the burden created by a tax exemption by compensating the municipality for the services rendered to the exempt entity.  *Snoqualmie*, 187 Wn.2d at 301.  Regardless of whether either statute creates a PILT, the County was not utilizing a PILT system to seek compensation from the Department.  Rather, the County attempted to levy the weed assessments directly against the Department, believing the Department was not exempt from the weed assessment.  Thus, the County's argument regarding a PILT has no bearing on our analysis.

assessments against state owned lands. Similarly, RCW 17.04.240 does not explicitly authorize a weed assessment against state owned lands. Without explicit authority to levy the weed assessments against state owned lands, the County cannot levy this special assessment against the Department.[9]

## V. EQUAL PROTECTION

The County argues that exempting state agencies from the weed assessment would violate the equal protection clauses of the United States and Washington Constitutions. Specifically, the County argues that different members of the same land classification would be treated differently because private landowners would be assessed, but state owned lands would not be assessed. The Department argues that the County lacks standing to invoke the equal protection clause. We hold that the County does not have standing to assert this constitutional challenge.

The Fourteenth Amendment to the United States Constitution provides in relevant part that: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." Article 1, section 12 of the Washington Constitution provides that: "No law shall be passed granting to any citizen, class of citizens, corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens . . . ." Courts often treat claims under these two constitutional provisions as presenting one equal protection challenge to the governmental classification at issue. *Foley v. Dep't of Fisheries*, 119 Wn.2d 783, 788, 837 P.2d 14 (1992).

---

[9] Because RCW 17.04.240 and 17.10.240 lack express authority to specially assess state owned lands, we do not consider whether the Department's lands here were specially benefited by the County's noxious weed control.

No. 52329-9-II

Political subdivisions cannot invoke the Fourteenth Amendment against a state. *City of Newark v. New Jersey*, 262 U.S. 192, 196, 43 S. Ct 539, 67 L. Ed. 943 (1923); *see also Samuel's Furniture, Inc. v. Dep't of Ecology*, 147 Wn.2d 440, 463, 54 P.3d 1194 (2002).

Here, the County cannot bring a constitutional equal protection argument because it is a political subdivision of the State. Accordingly, we do not address the merits of the County's equal protection argument.

We affirm.

_____
Worswick, J.

_____
Lee, C.J.

_____
Melnick, J.

19