**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**NOVEMBER 22, 2022**
In the Office of the Clerk of Court
WA State Court of Appeals Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MOSES LAKE IRRIGATION AND REHABILITATION DISTRICT, a public irrigation and rehabilitation district, | ) ) ) ) | No. 38030-1-III |
| Appellant, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| DARRYL PHEASANT, in his capacity as Treasurer of Grant County, Washington, DARRYL PHEASANT, in his capacity as Ex Officio Treasurer for MOSES LAKE IRRIGATION AND REHABILITATION DISTRICT, | ) ) ) ) ) ) ) ) | |
| Respondent. | ) | |

SIDDOWAY, C.J. — Moses Lake Irrigation & Rehabilitation District (the District)

appeals the dismissal of its action seeking to compel the Grant County Treasurer, Darryl

Pheasant, to send statements of District assessments on land and improvements to District

residents. A landowner in the District had filed a legal challenge to the District's method

of assessment, which led to a determination by a federal court that the District's

assessments were state taxes. Aware of the legal challenge and federal court ruling, Mr.

Pheasant—believing the District has no taxing authority, and its nontax assessment

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

authority applies only to the value of land, not improvements—declined to send notice of what he considered invalid assessments.

The District responded with the action below, petitioning for an alternate writ of mandamus directing Mr. Pheasant to send statements of its assessments. The trial court denied relief, entering summary and declaratory judgments that the District's method of assessment amounts to an unauthorized tax and that "land," as used in RCW 87.03.240 and RCW 87.84.070, means land itself, without improvements.

The District appeals. We affirm the trial court's determination that the District's assessments in reliance on chapter 87.03 RCW are invalid, reverse its determination that the District's assessments in reliance on RCW 87.84.070 are invalid, and reverse in part its limiting construction of "land." We hold that as used in chapter 87.03 RCW (but not as used in RCW 87.84.070), "land" includes improvements.

FACTS AND PROCEDURAL BACKGROUND

In 1928, landowners who described their lands as susceptible of irrigation and desired to organize an irrigation district in Grant County, petitioned the board of county commissioners for approval of such a district for "all of the purposes mentioned in Section 7417 of the Supplement to Remington and Ballinger's Code." Clerk's Papers (CP) at 1101. They identified those purposes as including the construction, purchase, repair, improvement, operation and maintenance of irrigation works for the irrigation of lands within the operation of the District. The plan of improvement contemplated was

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

"the construction of a permanent dam at the outlet of Moses Lake for the purpose of catching and holding all of the waters flowing into said Moses Lake." CP at 1102.

Creation of the Moses Lake Irrigation District was approved, and it obtained a water right that has been certified to be up to 50,000 acre-feet, for the irrigation of 11,213 acres within the district. Laws governing the operation of irrigation districts are now codified at chapter 87.03 RCW. As relevant to this appeal, which involves the authority to raise funds, irrigation districts may do so in three ways: they may make assessments "in proportion to the benefits accruing to the lands assessed" under RCW 87.03.240; they may "fix reasonable rates or tolls and charges, and collect the same from all persons for whom district service is made available for irrigation water, domestic water, electric power, drainage or sewerage, and other purposes" under RCW 87.03.445(2); and, as also permitted by RCW 87.03.445(2), they may employ both rates or tolls or charges and assessment.

For decades, the District assessed its landowners based on acreage. Historical records reveal that between 1940 and 1946, the assessments ranged from $0.15 per acre to $1.00 per acre.

The District has never constructed any pumps, canals, or pipelines for delivering irrigation water from Moses Lake to district members. Instead, landowners are responsible for building any system to deliver water to their individual properties, and some members of the District have done so. The District does not monitor who is taking

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

water from the lake for irrigation purposes or charge them for taking water.  Lake water

can be taken by anyone, for free.

In 1961 and 1963, legislation supported by the District was passed that allowed

any irrigation district that had the major portion of an inland navigable body of water

within its exterior boundaries, and that had been granted rights to 50,000 acre-feet of

water or more, to become an "irrigation and rehabilitation" district.  LAWS OF 1961,

ch. 226, §§ 1-8; LAWS OF 1963, ch. 221, §§ 1-11.  District records reflect its concern in

1962 that "'the farmers within the boundaries of the . . . District are presently irrigating

only about 3,000 acres of land and some of this land is being converted from farm land to

residential and other land uses.'"  CP at 913.  It recognized a "'real danger of the lake

being reduced to an elevation from its present level[,] which would be disadvantageous to

the people and property owners of the . . . District,'" given that the lake provided "an

abundance of opportunity for recreation associated with water and water sports, all of

which has a definite influence on the value of homes and properties with[in] the

boundaries of the . . . District." *Id.*

The legislation provided that in addition to their irrigation purposes, irrigation and

rehabilitation districts could be organized and maintained "to further the recreational

potential of the area and to further the rehabilitation or improvement of inland lakes and

shore lines . . . to further the health, recreation, and welfare of the residents in the area."

LAWS OF 1963, ch. 221, § 3.  It provided that the directors of an irrigation and

4

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

rehabilitation district, in addition to retaining their authority as directors of an irrigation

district, were authorized to "specially assess *land* located in the district for benefits

thereto" (emphasis added), providing that such assessment "shall not exceed one mill

[$1 per $1,000 of assessed value] upon such assessed valuation without securing

authorization by vote of the electors of the district." LAWS OF 1961, ch. 226, § 8. The

provisions governing irrigation and rehabilitation districts are codified in chapter 87.84

RCW.

   With the approval of the Grant County Commissioners, the District became, and it

remains, the only irrigation and rehabilitation district in the State of Washington.

Following its conversion to an irrigation and rehabilitation district, District directors

voted to set the levy at the one mill limit they were authorized to assess without a vote of

District electors.

   *Authority to assess for rehabilitation purposes is reduced, and questions about*
   *District assessments begin to be raised*

   In 1973, the legislature reduced the amount the directors of an irrigation and

rehabilitation district can specially assess for recreational and rehabilitation benefits

without a vote of the electors. It was reduced to $0.25 per $1,000.00 of assessed value.

LAWS OF 1973, 1st Ex. Sess., ch. 195, § 132. That remains the limit today. RCW

87.84.070. District directors deemed more than that to be needed for its operations,

which consist of dredging and treating milfoil infestation to maintain the quality and

5

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

volume of the lake, maintaining a pump station whose circulation of water improves water quality, maintaining the dam, and owning, and maintaining a lakeshore park, Connelly Park. The park has a boat launch, dock and beach. The District has also sponsored powerboat races and fishing derbies on the lake.

Following the reduction of its assessment authority as a rehabilitation district, the District continued to specially assess District properties based on their assessed value at amounts exceeding $0.25 per $1,000.00 in value, without securing approval of the District electors. They construed the "land" they were authorized to assess for benefits to be property, including improvements.

In performing audit work in 2012, staff of the state auditor questioned whether it was allowable for the District to assess property owners based on assessed valuation, given RCW 87.03.240's language that assessments "shall be made in proportion to the benefits accruing to the lands assessed." CP at 568 (emphasis omitted). The District's response, according to audit records, was that "all property owners have the same benefits because each of them have the legal right to request water be provided to them (with the understanding that the cost of infrastructure would be borne by the property owner)," and in the District's view, "all benefits were equal." *Id*.

Audit staff looked at the issue again in 2013, and one staffer compiled a spreadsheet that identified parcels within the District as commercial, residential and

6

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

agricultural and calculated their assessment per acre—the assessment approach followed

through at least 1946.  Audit staff determined that

> [c]ommercial lots with little-to-no need for irrigation water are paying
> $500-$1,000 per acre, residences that can use irrigation water for their
> lawns are paying $100-$600 per acre, and large agricultural/potential-
> agricultural parcels are paying less than $100 per acre.

CP at 568.  No adverse audit finding was made, however, based on a legal opinion from

the District's counsel, accepted by the state auditor, that under RCW 87.03.445, irrigation

districts are statutorily authorized to raise operating funds using rates, tolls, or charges

that are not required to be benefit-based.

In 2014, Michael "Mick" Hansen sued the District, its directors, and Grant County

and some of its officials, challenging the District's assessments and its allocation of

voting rights to members.  *Hansen v. Moses Lake Irrig. & Rehab. Dist. et al.*, Grant

County Superior Court Case No. 14-2-01214-1 (*Hansen v. MLIRD*).[1]  Among the county

officials sued was Mr. Pheasant.  Mr. Hansen characterized the District as engaging in

---

[1] We take note of adjudicative facts from *Hansen v. MLIRD*.  Under ER 201(c), courts may take judicial notice of adjudicative facts, whether requested to or not.  Courts applying the parallel federal rule have recognized "that a 'court may take judicial notice of a document filed in another "court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."'" *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (quoting *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992)); *accord* 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 201.9 (6th ed. 2016) (noting distinction between consulting the record of another case to determine whether it *contains* something and consulting the record to determine whether disputed facts were found to be true).  We take judicial notice of only relevant developments occurring in *Hansen v. MLIRD*.

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

illegal taxation, contending that the District was then financing its operations by a uniform assessment against all real property within its boundaries, regardless of location or water use, at a rate of $1.00 per $1,000.00 of assessed value. It had never held an election for approval of an above-$0.25 per $1,000.00 rate, and he alleged that to justify the amount being assessed, the District was relying on the statutory powers granted to irrigation districts under chapter 87.03 RCW. He contended that those statutes required assessments for irrigation benefits to be made in proportion to the benefits accruing to the lands assessed, and the District had never conducted any studies to determine the actual level of irrigation benefit received by parcels or classes of property owners within the District. He cited the fact that the District had never constructed or maintained a delivery system. He alleged it had not established any usage rates, tolls or charges for use of its 50,000 acre-feet of water; it did not undertake to regulate or control use of its water; and it had no records of the amount of water taken from the lake by users.

Mr. Hansen's claims included federal civil rights claims under 42 U.S.C. § 1983, and the District removed his action to federal court. Beginning in the federal court, the District took an unusual approach in responding to Mr. Hansen's contention that it was imposing an authorized tax. A defendant's usual response to such a challenge is to demonstrate, as best it can, that its assessments lack the characteristics of a tax. *E.g.*, *Samis Land Co. v. City of Soap Lake*, 143 Wn.2d 798, 807-14, 23 P.3d 477 (2001) ("standby charge" for future water/sewer connection); *Carillo v. City of Ocean Shores*,

8

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

122 Wn. App. 592, 604-08, 94 P.3d 961 (2004) ("availability charge" for future

water/sewer connection); *Arborwood Idaho, LLC v. City of Kennewick*, 151 Wn.2d 359,

371-73, 89 P.3d 217 (2004) (ambulance service charge); *and City of Snoqualmie v.*

*Constantine*, 187 Wn.2d 289, 300-03, 386 P.3d 279 (2016) (payment in lieu of leasehold

tax). The District began arguing, however, that its uniform rate imposed on the assessed

valuation of District properties *is* a state tax, and on that basis, that the federal Tax

Injunction Act, 28 U.S.C. § 1341, and Washington's anti-injunction act, RCW 84.68.010,

were a bar to Mr. Hansen's challenge. In the case of the federal Tax Injunction Act, it

argued that the federal court lacked jurisdiction over a challenge to the validity of a state

tax. In the case of the state act, it argued that the exclusive remedy for challenging an

invalid tax is a to pay the tax under protest and seek a refund, which Mr. Hansen had not

done.

The federal court was persuaded, in light of Mr. Hansen's and the District's

agreement, that the assessments were a state tax. It determined that it lacked jurisdiction

of Mr. Hansen's federal claim and was prevented from exercising supplemental

jurisdiction over the state claims. It remanded Mr. Hansen's suit to the Grant County

Superior Court in October 2016.

Over a year later, the District's board of directors approved an assessment roll it

was required to deliver to the county treasurer by January 15, 2018. The board adopted

rates of $0.25 per $1,000.00 of assessed value under chapter 87.84 RCW, its "irrigation

9

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

and rehabilitation district" authority, and $0.50 per $1,000.00 of assessed value under RCW 87.03.445, its "irrigation district" authority. The District submitted its assessment roll reflecting the rates to Mr. Pheasant.

Mr. Pheasant had multiple concerns about the assessments. He believed, and had confirmed that personnel of the Washington State Department of Revenue (DOR) agreed, that the District's authority to assess "land" meant only land, not improvements. He was aware that in *Hansen v. MLIRD*, the District had made multiple admissions that its rates and assessment were a tax, despite that fact that it is a benefit/assessment district, and lacks taxation authority. He believed that if the rates and assessments *were* a tax, they were being imposed on landowners who would be constitutionally or statutorily exempt from state taxation.

By March 2018, Mr. Pheasant's attorney in the Grant County Prosecutor's office informed the District that Mr. Pheasant refused to send statements of assessment for the amounts provided him by the District. In response, the District commenced the action below, petitioning the court for an alternate writ of mandamus ordering Mr. Pheasant to send out statements of its assessments. Mr. Pheasant's answer asserted as an affirmative defense that the District has no taxing authority and the assessments he was being asked to declare due from landowners were unconstitutional and illegal.

The parties initially briefed their positions with a view to a hearing, but soon entered into a mediated stay agreement under which Mr. Pheasant agreed to send notices

10

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

of the District's assessments, the District's action would be stayed pending final

judgment in *Hansen v. MLIRD*, and the District would hold Mr. Pheasant and Grant

County harmless from any and all claims arising from District assessments during the

period of the stay. The stay agreement further provided that it "shall not be argued or

construed to constitute an admission by any party." CP at 757.

> *The superior court resolves the issue of irrigation district authority in* Hansen v.
> MLIRD *and resolves the remaining issues raised by Mr. Pheasant in this action*

In an order filed in *Hansen v. MLIRD* in June 2020, Judge David Estudillo, who

was also the judge assigned to this mandamus action, granted Mr. Hansen's request for a

declaratory judgment on the illegality of the District's method of assessment in reliance

on its authority under chapter 87.03 RCW. Judge Estudillo rejected the District's

threshold argument that he lacked jurisdiction because Mr. Hansen had not paid District

"taxes" under protest, that the District argued was required by RCW 84.68.020. Then,

citing the District's complete lack of information about irrigation use of its water, Judge

Estudillo explained he could only conclude the current "tax" rate levied against Mr.

Hansen's property under RCW 87.03.445 was not reasonable, and was otherwise

excessive and disproportionate to the services rendered, in violation of that statute. He

also concluded that for Mr. Hansen's real property that is not adjacent to Moses Lake, he

was not a person for whom district service is made available for irrigation water,

domestic water, electric power, drainage or sewerage, and other purposes. Accordingly,

11

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

Judge Estudillo ruled that the District may not levy or fix rates or tolls and charges against Mr. Hansen's property not adjacent to the lake, and was required to fix "reasonable" rates or tolls and charges for his property adjacent to Moses Lake before attempting to levy them under RCW 87.03.445(2) and (4).[2]  The District appealed.

In October 2020, Mr. Pheasant moved for summary judgment and declaratory judgment in this action.  The District asked that the case remain stayed until the resolution of the appeal of *Hansen v. MLIRD*, but Mr. Pheasant responded that *Hansen v. MLIRD* resolved only the invalidity of the District's assessments under its irrigation district authority and did not address other issues his office needed resolved in order to know whether to send notices of the District's proposed assessments.  In particular, he was seeking a decision on the validity of District assessments under RCW 87.84.070, including the meaning of "land" as used in that statute.  In an order entered in February 2020, Judge Estudillo denied any further stay and granted Mr. Pheasant's requests for declaratory and summary judgments.  His order declared

  a. [The District's] funding mechanism is an unauthorized tax.
  b. [The District] may not submit tax/assessment roles based on ad valorem value.
  c. Whether [the District] may not submit tax assessment rolls based on irrigation assessment for properties that do not have access to irrigation water form [District] facilities is moot based on the Court[']s finding in

---

[2] The court expressly made no ruling regarding the .25 mill assessment the District had been levying against Hansen' land for rehabilitation services pursuant to RCW 87.84.070.

12

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

the first two Declaratory Judgments. However, if the Court's findings in the first two Declaratory Judgments are considered incorrect, then the Court finds [the District] may not submit tax assessment roles based on irrigation assessment for properties that do not have access to irrigation water from [District] facilities.

d. The District's funding methodology under RCW 87.03.445(2) is not authorized and the District may not use such methodology to impose an ad valorem tax on land and improvements. "Land" as used in RCW 87.03.240 and RCW 87.84.070 does not include the land and improvements but only the land itself.

e. [Mr. Pheasant] has no duty to issue tax statements based on nonconforming tax or assessment rolls that [the District] provides.

CP at 1925-26.

The District appeals.

ANALYSIS

The District makes five assignments of error. Its first and fourth assigned errors mischaracterize the declaratory judgments entered by the trial court and do not warrant analysis.

With respect to its first assignment of error, RCW 87.84.070 provides that District directors are empowered to specially assess land located in the District for benefits thereto taking as a basis the last equalized assessment for county purposes, provided that the assessment does not exceed $0.25 per $1,000 of assessed value. Contrary to the District's assignment of error, the trial court did not hold otherwise.

Contrary to the District's fourth assignment of error, the trial court did not hold that operating and maintaining a reservoir could not be an irrigation district "service."

13

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

The legal issue presented, and the trial court's concern, was whether the "rate" the District claimed to be charging was a "reasonable rate" for "ma[king] available" "service . . . for irrigation water" to the persons assessed. *See* RCW 87.03.445(2).

We address the remaining assignments of error in turn.

I.      THE TRIAL COURT PROPERLY EXAMINED WHETHER THE DISTRICT'S PROPOSED ASSESSMENTS WERE UNAUTHORIZED TAXES

Mr. Pheasant sought rulings pursuant to the Uniform Declaratory Judgments Act, chapter 7.24 RCW, regarding his duties as Grant County treasurer and ex officio treasurer of the District. We review declaratory orders, judgments, and decrees de novo. *Borton & Sons, Inc. v. Burbank Props., LLC*, 196 Wn.2d 199, 205, 471 P.3d 871 (2020); RCW 7.24.070.

The District's second and third assignments of error are related. The second is that the trial court erred in "substituting its judgment on assessment methodology under RCW 87.03.445 for that of the elected [District d]irectors." Appellant's Opening Br. at 1. The third is that the court erred in holding that the District's "rate assessment is an unauthorized 'tax' when it is expressly authorized by statute and immediately becomes enforceable as an 'assessment.'" *Id.*

The Washington Constitution requires that taxes shall be levied and collected for "public purposes only." WASH. CONST. art. VII, § 1. "'An expenditure is for a public purpose when it confers a benefit of reasonably general character to a significant part of

14

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

the public.'" *CLEAN v. State*, 130 Wn.2d 782, 793, 928 P.2d 1054 (1996) (quoting *In re*

*Marriage of Johnson*, 96 Wn.2d 255, 258, 634 P.2d 877 (1981)). Consistent with this

constitutional limitation, taxes have been described colloquially as compulsory payments

that can be "imposed anywhere and used for anything," so long as "the imposition is

'fair.'" Hugh D. Spitzer, *Taxes vs. Fees: A Curious Confusion*, 38 GONZ. L. REV. 335,

337 (2003) (capitalization omitted). "Because taxpayers have no guarantee that their

dollars will directly benefit them, a number of protections have evolved to assure fairness

in the distribution of the tax burden." *Id.* at 340. The Washington Constitution imposes

fundamental constitutional constraints on governmental taxation authority: the "all-

important tax uniformity requirement"[3] and the one percent ceiling.[4] *Samis*, 143 Wn.2d

at 805.

The District now admits it lacks the authority to impose taxes. *See* Appellant's

Opening Br. at 6 ("rate assessment method is not a general 'tax'"), 40 ("MLIRD does not

claim that irrigation districts are authorized to impose <u>general</u> taxes for <u>general</u>

governmental purposes."). Instead, it is authorized by RCW 87.03.240 to make

---

[3] "All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax . . . . All real estate shall constitute one class . . . ." WASH. CONST. art. VII, § 1.
[4] "Except as hereinafter provided and notwithstanding any other provision of this Constitution, the aggregate of all tax levies upon real and personal property by the state and all taxing districts now existing or hereafter created, shall not in any year exceed one percent of the true and fair value of such property in money." WASH. CONST. art. VII, § 2.

15

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

"assessments" in proportion to benefits and by RCW 87.03.445(2) to fix and collect

"reasonable rates or tolls and charges" from persons to whom district service is made

available. It is authorized by RCW 87.84.070 to "specially assess land located in the

district for benefits thereto," provided that the assessment does not exceed $0.25 per

$1,000.00 of assessed value. Because "assessments based on benefits" and "rates, tolls,

or charges for delivery of a service" are not taxes, they are exempt from the constitutional

constraints on taxation authority.

Given the inherent danger that legislative bodies might circumvent constitutional

constraints by levying charges that, while officially labeled something else, possess all

the basic attributes of a tax, "[c]ourts must . . . look beyond a charge's official

designation and analyze its core nature by focusing on its purpose, design and function in

the real world." *Samis*, 143 Wn.2d at 806. Three factors analyzed for this purpose are

referred to as the "*Covell* factors," following *Covell v. City of Seattle*, the decision in

which they were consolidated as a three-part test. 127 Wn.2d 874, 879, 905 P.2d 324

(1995), *abrogated on other grounds by Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d

694 (2019). The factors have been broadened in later cases, which have recognized that a

"tax" versus "regulatory fee" dichotomy identified in *Covell* failed to account for the full

spectrum of government charges that, while not regulatory fees, are also not taxes. *See,*

*e.g.*, *City of Snoqualmie v. Constantine*, 187 Wn.2d 289, 300, 386 P.3d 279 (2016)

16

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

(Government-imposed user charges can include "commodity charges, burden offset charges, and special assessments;" these, too, are not taxes.).

A governmental charge that is not subject to the constitutional constraints on governmental taxation but is determined under the three-factor analysis to be a "tax[ ] in disguise" or a "tax in fee's clothing" will be held invalid. *Arborwood*, 151 Wn.2d at 371, 373. That is the issue presented by the District's action and Mr. Pheasant's defense: are the District's so-called "rates" and special assessments invalid "taxes in disguise"?

A. The portion of the District's proposed assessments that is based on its "irrigation district" authority is an invalid tax

At issue in *Hansen v. MLIRD* was only the District's assessments relying on its authority as an irrigation district. The statutory authority on which the District relies for its assessments in excess of $0.25 per $1,000.00 in assessed value is its authority as an irrigation district to "fix reasonable rates or tolls and charges, and collect the same from all persons for whom district service is made available for irrigation water." RCW 87.03.445(2). The District's position is that by maintaining a reservoir, irrigation water service is being "made available" because District residents can draw irrigation water from the lake for parcels adjacent to the lake, and construct a delivery system to transport water from the lake to nonadjacent parcels. Our unpublished opinion in *Hansen v. Moses Lake Irrigation and Rehabilitation District*, No. 37698-2-III (Wash. Ct. App. Sept. 22, 2022) (unpublished), http://www.courts.gov/opinions/pdf/376982_inp.pdf, resolved this

17

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

issue, but in the context of other issues and arguments that were of limited public interest. The controlling principles and precedents were more squarely presented in this appeal.

In *Hansen v. MLIRD*, the trial court construed the phrase "for whom district service is made available for irrigation water" by looking to *Otis Orchards Co. v. Otis Orchards Irrigation District No. 1*, 124 Wash. 510, 215 P. 23 (1923), and *Northern Pacific Railway Co. v. Walla Walla County*, 116 Wash. 684, 200 P. 585 (1921). As the trial court observed, in *Otis Orchards*, the appellant challenged its liability for irrigation district assessments against its unimproved land and the land on which it grew wheat without irrigation. 124 Wash. at 512. The irrigation district had a piped delivery system to all of the appellant's lands, from which it could draw water at any time, making "'water . . . available whenever the appellant sees fit to use it.'" CP at 920 (quoting *Otis Orchards*, 124 Wash. at 511). The trial court relied on the *Otis Orchards* court's holding that "'[i]t is generally understood that the land within a district is benefited by an irrigation system to the extent that the added facilities for irrigation add to the value of the land itself, and this does not depend upon the use the owner may make of the water.'" CP at 920 (quoting *Otis Orchards*, 124 Wash. at 513). The trial court observed that "[i]t follows that the land was more marketable and of increased value because irrigation water could immediately be delivered to it." CP at 921.

By contrast, the trial court observed, in *Northern Pacific Railway*, the railroad successfully challenged charges imposed on land owned in an irrigation district that was

18

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

not capable of being benefitted by irrigation, given its nature and topography. CP at 921. The trial court cited the court's rejection of the county's argument that "'the mere fact that the land happens to be within the boundaries of the district necessarily means it is capable of receiving benefit from the maintenance of the irrigation system of the district,'" and its holding that the railroad was not liable to contribute toward maintenance of the system. CP at 921 (quoting *N. Pac. Ry.*, 116 Wash. at 688).

In this case, Mr. Pheasant relied in addition on cases applying the *Covell* factors. Those factors are controlling in determining whether a charge is a constitutional fee rather than as an unconstitutional tax, so they are obviously important in construing RCW 87.03.445(2). We presume the legislature intended to authorize irrigation districts (and rehabilitation and irrigation districts) to fix constitutional rates or tolls and charges, not unconstitutional taxes. We construe the District's authority to make assessments with that in mind. *See State v. Batson*, 196 Wn.2d 670, 674, 478 P.3d 75 (2020) (Statutes are presumed constitutional and will be construed, wherever possible, to uphold their constitutionality.).

The first *Covell* factor is whether the primary purpose in imposing the assessment is to accomplish a public benefit that costs money or whether its primary purpose is to pay for a regulatory scheme, a particular benefit conferred on District landowners, or mitigation of a burden caused by District landowners. *Arborwood*, 151 Wn.2d at 371.

19

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

> If the primary purpose is to raise revenue used for the desired public benefit, the charges are a tax. If the primary purpose is to regulate the fee payers—by providing them with a targeted service or alleviating a burden to which they contribute—that would suggest that the charge is an incidental tool of regulation.

*Id.* (citing *Samis*, 143 Wn.2d at 806-07; *Covell*, 127 Wn.2d at 879).

The second factor is whether the money collected must be segregated and allocated *only* to the authorized purpose. *Id.* at 372. "If the money must be allocated only to the authorized purpose, the charge is considered to be a fee." *Id.* (citing *Samis*, 143 Wn.2d at 809). This second factor "requires that 'regulatory fees' be 'used to regulate the entity or activity *being assessed.*'" *Samis*, 143 Wn.2d at 810.

The third *Covell* factor is whether there is a direct relationship between the fee charged and the service received by those who pay the fee or between the fee charged and the burden produced by the fee payer. *Arborwood*, 151 Wn.2d at 372-73 (citing *Samis*, 143 Wn.2d at 806; *Covell*, 127 Wn.2d at 879). "If no such relationship exists, the charge is probably a tax in fee's clothing." *Id.* at 373. If a direct relationship *does* exist, the charge may be a fee even if the charge is not individualized to the benefit or burden associated with each fee payer. *Id.*

Applying these factors, controlling case law holds that "standby" or "availability" charges for a service that is not yet being provided or is otherwise not demonstrably beneficial are unauthorized taxes, not fees. This was the result in *Samis*, which involved a challenge to Soap Lake's flat-rate annual charge on any vacant, unimproved land

20

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

abutting a line providing water or sewer service but which had no connection thereto. 143 Wn.2d at 814. It was the result in *Arborwood*, in which Kennewick collected the same monthly charge for ambulance service from every household, business and industry within the city served by its emergency medical and ambulance services irrespective of use or need for the service. 151 Wn.2d at 373. It was the result in *Carillo*, in which water and sewer availability charges were collected from owners of vacant lots unconnected to city systems. 122 Wn. App. at 608-09.

These cases teach that for the District's revenue-raising approach of collecting reasonable rates from persons for whom district irrigation service is "made available" to be constitutional, RCW 87.03.445(2) must be construed to authorize assessment of only those persons who are connected to a district irrigation water delivery system. The trial court reasonably ruled that with respect to Mr. Hansen's parcels that are not adjacent to the lake, he is not a person for whom district service is made available for irrigation water within the meaning of RCW 87.03.445(2).

In the case of Mr. Hansen's challenge to the District's assessment of his one lakefront parcel, the trial court focused on the District's statutory authority to fix "reasonable" rates or tolls and charges. RCW 87.03.445(2). And the assessment of a "rate," as distinguished from a "toll" or "charge," is subject to RCW 87.03.240(1)'s requirement that assessments be made in proportion to the benefits accruing to the lands

21

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

assessed. RCW 87.03.445(4) provides that only tolls and charges—not rates—are *not*

subject to RCW 87.03.240(1)).

To be constitutional, such rates must qualify as fees, not taxes, under the *Covell*

factors, which independently require a direct, reasonable relationship between the fee

imposed and either a service provided to the fee payer or a fee payer harm mitigated.

The trial court recognized that because the setting of rates is a legislative function,

courts review it under the "arbitrary and capricious" test. *Teter v. Clark County*, 104

Wn.2d 227, 234, 704 P.2d 1171 (1985) (citing *Tarver v. City Comm'n of Bremerton*,

72 Wn.2d 726, 731, 435 P.2d 531 (1967)). "Arbitrary" action is "'wilful and

unreasoning action, without consideration and regard for facts and circumstances.'" *Id.*

at 237 (quoting *Miller v. City of Tacoma*, 61 Wn.2d 374, 390, 378 P.2d 464 (1963)).

In *Teter*, landowners challenged water management charges imposed by the

county on properties deemed to contribute to surface water runoff. The charges were

based on "formulae devised after studies of engineering reference material, aerial

photographs, contour maps, and on-site examinations of some of the properties." *Id*. at

237. The properties were classified for purposes of computing charges based on the

hydrologic impact of the development and use of the properties upon the peak rates of

runoff, total quantity of runoff, and water quality impacts. *Id.* Charges were determined

according to engineering knowledge on the ratio of pervious to impervious land in four

development categories. *Id.*

22

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

The landowners argued that the charges arrived at were arbitrary and capricious merely because no consideration was given to the individual characteristics of each of the properties charged. *Id.* The court held that the county's rate schedule bore a reasonable relation to the contribution of each lot to surface runoff:

> Respondents are not required to *measure each* residential lot to ascertain the *exact* amount of impervious surface on each one. Absolute uniformity in rates is not required. The rates for each class must be internally uniform, but different classes may be charged different rates. Further, only a *practical* basis for the rates is required, not mathematical precision.

*Id.* at 238 (citations omitted). The court observed that the county "submitted numerous documents which show how and why the rate schedule was devised." *Id.* It held that the landowners had not "prove[d] that respondents acted in a willfully unreasonable manner, without regard to facts and circumstances, by merely asserting that the rates are arbitrary because respondents did not *individualize each rate.*" *Id.*

Mr. Pheasant argues that the District has not conducted any studies, held public hearings or otherwise sought to determine the benefit of its operations to landowners, with the result that its actions in setting and maintaining assessments are arbitrary and capricious and a violation of state law.

The District's refusal to conduct any review or analysis in imposing its rate is a paradigm of "wilful and unreasoning action, without consideration and regard for facts and circumstances." *Teter*, 104 Wn.2d at 237. After the legislature reduced the amount the District could assess for lake improvement and rehabilitation, and in light of its

23

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

members' diminished need for irrigation service, the District could have sought approval

from its electors of a higher rehabilitation assessment. It could have analyzed to whom it

was making or could make irrigation service available, at what defensible, "reasonable,"

rate. What it could *not* do is simply continue business as usual and ensure itself an

undiminished revenue stream by ratcheting up a uniform "irrigation service" rate on

assessed value and charging it to irrigation users and nonusers alike.

The trial court properly declared that the portion of the District's proposed

assessments that relied on its authority under RCW 87.03.445 is an invalid tax.

> B.     The record does not support the trial court's ruling declaring the $0.25 per
>        $1,000.00 in value assessment under RCW 87.84.070 to be an invalid tax

In Mr. Pheasant's memorandum seeking the declaratory judgments, he addressed

the *Covell* factors and conceded that the purpose of the District's $0.25 per $1,000.00 in

value assessed as a rehabilitation and irrigation district weighed *against* finding that

assessment to be a tax. As he explained:

> Here, MLIRD as an irrigation and rehabilitation district has been given the
> purpose
>
> > to further the recreational potential of the area and to further the
> > rehabilitation or improvement of inland lakes and shore lines and the
> > modification or improvement of existing or planned control
> > structures located in the district in order to further the health,
> > recreation, and welfare of the residents in the area.
>
> RCW 87.84.050. Additionally, it has also been given the statutory ability
> to raise funding by way of a special assessment. RCW 87.84.070. As such,
> there is a colorable argument that . . . MLIRD has been given a purpose and
> a means to raise funds, and funds needed for maintenance and operations

24

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

arguably are necessary for MLIRD to fulfill its purpose under RCW 87.84.050.

Furthermore, there is a colorable argument that maintenance and operations costs constitute local improvements and directly benefit the land as required under Washington State Constitution art. VII, section 9 and case law. *See Kittitas C[ounty] v. Washington State Dep't of Transp.*, 13 Wn. App. 2d 79, 89, 461 P.3d 1218, 1224 (2020) ("Special assessments provide 'for the construction of local improvements that are appurtenant to specific land and bring a benefit substantially more intense than is yielded to the rest of the municipality.'" (quoting *Heavens v. King County Rural Library Dist.*, 66 Wash.2d 558, 563, 404 P.2d 453 (1965))). Maintenance and operations help maintain Moses Lake, which as a recreational lake, arguably enhances the property value of the properties within the district. If MLIRD were to stop its maintenance and operations efforts, arguably Moses Lake's water quality would decrease and as a result the property within the district may not be as valuable.

As there is a colorable argument that maintenance and operations costs, which is MLIRD's stated purpose for the funds, are indirectly authorized and do benefit the land within MLIRD, this factor also weighs against finding the $0.25 assessed by MLIRD under RCW 87.84 a tax.

CP at 853-54.

Mr. Pheasant argued that the second and third *Covell* factors weighed in favor of finding a tax, however, because of the District's failure to demonstrate the amount it was applying to rehabilitation purposes versus the amount it was applying to irrigation purposes. The second and third factors are, again, whether the money collected is applied only to the authorized purpose and whether there is a direct relationship between the fee charged and the benefit received.

In this case, however, many expenditures can be characterized as for a rehabilitation purpose even if the District contends they could also be for an irrigation

25

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

purpose. In such a case, if evidence in the record suggests that *at least* the amount raised

by specially assessing $0.25 per $1,000.00 in assessed value is being applied to

rehabilitation purposes, the trial court should not have found the special assessment to be

invalid.

Among evidence in the record is the conclusion of state audit staff that the most

significant part of District funds was being spent on rehabilitation rather than irrigation

purposes. In questions posed to the District by the state auditor's office in 2012, the

following observations were made:

> In discussing that the District spends a significant portion of its Irrigation
> District funding on lake water quality projects (weed harvesting operations,
> sediment removal efforts), the question arose about whether these efforts
> are properly authorized purposes for which Irrigation District funding can
> be spent. In short, on the surface these appear to be more related to
> rehabilitation purposes (RCWs 87.84.005 and 87.84.050) than they are to
> irrigation district purposes (RCWs 87.03.010 and 87.03.015). I looked at
> the District's budget and actual spreadsheet for 2011, and it appears that at
> least $550,000 was spent on water quality efforts using irrigation district
> funding for direct expenses and, of course, additional amounts in related
> payroll and overhead that could only be estimated.
>
> In addition to the assessment methodology question above, we would need
> to know how water quality efforts would qualify as authorized purposes
> under the Irrigation District statutes (specifically RCWs 87.03.010 and
> 87.03.015), as opposed to rehabilitation purposes such as rehabilitation and
> improvement of inland lakes (rehabilitation statute RCW 87.84.050).

CP at 548-49. And the trial court's findings that the District spends none of its money on

irrigation works (e.g., pumps, canals and pipelines) reinforces a reasonable inference that

the purpose of most of its expenditures is a lake rehabilitation and improvement purpose.

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

RCW 7.24.090 provides that when a declaratory judgment proceeding "involves the determination of an issue of fact," such issue may be tried and determined in the same manner "as issues of fact are tried and determined in other civil actions, in the court in which the proceeding is pending." In reviewing a trial court's factual findings in a declaratory judgment action, we determine if the findings were supported by substantial evidence in the record. *Schneider v. Snyder's Foods, Inc.*, 116 Wn. App. 706, 713, 66 P.3d 640 (2003) (citing *Landmark Dev., Inc. v. City of Roy*, 138 Wn.2d 561, 573, 980 P.2d 1234 (1999). The trial court's conclusion that the $0.25 special assessment is an invalid tax depends on an implicit finding that less than the amount raised by that assessment is being used for rehabilitation expenditures. Evidence in the record does not support that implicit finding. The trial court erred in declaring that the portion of the District's proposed assessments that relied on its authority under RCW 87.84.070 is an invalid tax.

II.     FOR PURPOSES OF CHAPTER 87.03 RCW, WHICH DOES NOT APPEAR TO BE MR. PHEASANT'S PRINCIPAL CONCERN, WE RELY ON THE DICTIONARY DEFINITION OF "LAND"

The District's fifth assignment of error is that the trial court erred "in determining that 'land' as used in RCW Ch. 87.03 does not include improvements on the land." Br. of Appellant at 1. Its brief addresses the meaning of "land" in only RCW 87.03.445, *see* Appellant's Opening Br. at 40-44, which is not one of the statutes specifically addressed by the trial court's rulings. Nevertheless, the trial court ruled that "land" for purposes of

27

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

RCW 87.03.240 does not include the land and improvements but only the land itself.

Presumably, the District is concerned that the judicial construction of "land" for purposes

of RCW 87.03.240 would also apply to RCW 87.03.445.

"Land" is not a defined term in chapter 87.03 RCW.  Accordingly, we turn to

principles of statutory interpretation to determine its meaning for purposes of the chapter.

"Our 'paramount duty in statutory interpretation is to give effect to the

Legislature's intent.'"  *State v. Barnes*, 189 Wn.2d 492, 495, 403 P.3d 72 (2017)

(quoting *State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992)).  "When a statute does

not define a term, we give the term 'its plain and ordinary meaning unless a contrary

legislative intent is indicated.'"  *Id.* (quoting *State v. Jones*, 172 Wn.2d 236, 242, 257

P.3d 616 (2011).  We generally derive this plain meaning from the context of the entire

act as well as other related statutes.  *Id.* at 495-96.  "We may also determine the plain

meaning of an undefined term from a standard English dictionary."  *Id.* at 496 (citing

*State v. Fuentes*, 183 Wn.2d 149, 160, 352 P.3d 152 (2015)).

"Land" is defined as "[a]n immovable and indestructible three-dimensional area

consisting of a portion of the earth's surface, the space above and below the surface, and

everything growing on or permanently affixed to it."  BLACK'S LAW DICTIONARY 1048

(11th ed. 2019).  A similar definition is found in the phrase "real property."  Real

property is defined as "[l]and and anything growing on, attached to, or erected on it."

BLACK'S LAW DICTIONARY 1472 (11th ed. 2019).

28

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

The Washington Supreme Court has previously relied on a similarly inclusive definition of "land," albeit in a different context. In *Island County v. Dillingham Development Co.*, 99 Wn.2d 215, 223, 662 P.2d 32 (1983), disagreement over the meaning of "land" arose where owners of larger-than-5-acre tracts of property that was largely under water argued they should be entitled to an exemption from platting requirements for 5-acre divisions of "land." There, as here, "land" was undefined by statute, so the court turned to the term's ordinary meaning. *Id.* at 224. It relied on the definition from an earlier edition of *Black's Law Dictionary,* which provided "'[l]and' includes not only the soil or earth, but also things of a permanent nature affixed thereto or found therein, whether by nature, as water . . . or by the hand of man, as buildings, fixtures, fences." *Id.* at 224 (emphasis omitted) (quoting BLACK'S LAW DICTIONARY, 1019 (4th rev. ed. 1968)). The court held the ordinance at issue included the land "under water." *Id.* at 224.

Mr. Pheasant's principal concern in his briefing on appeal is with the meaning of "land" as used in *RCW 87.84.070*, which authorizes the directors of a rehabilitation and irrigation district to "specially assess land" for benefits, "taking as a basis the last equalized assessment for county purposes." Br. of Resp't at 44-45 (emphasis omitted) (quoting RCW 87.84.070). In that context, Mr. Pheasant argues that we should infer that the legislature meant for "the normal assessment definitions and methods [to] apply." *Id.* at 44. Arguably, in that context, "land" would have a different meaning. But the District

29

No. 38030-1-III
*Moses Lake Irrig. & Rehab. Dist. v. Pheasant*

does not contend that the trial court incorrectly defined land for purposes of chapter 87.84 RCW or RCW 87.84.070. And it does not reply to Mr. Pheasant's argument about the proper construction of RCW 87.84.070. The District's challenge is to the term's meaning in chapter 87.03 RCW, which speaks of "land" only as parcels against which rates or tolls and charges are assessed. Unlike RCW 87.84.070, chapter 87.03 RCW does not use "land" to mean a county value for assessment purposes.

For purposes of chapter 87.03 RCW, Mr. Pheasant provides no reason why we should not rely on the definition of "land" from *Black's Law Dictionary*, just as the Supreme Court did in *Island County.*

We affirm the trial court's determination that the District's assessments in reliance on chapter 87.03 RCW are invalid, reverse its determination that the District's assessments in reliance on RCW 87.84.070 are invalid, and reverse in part its limiting construction of "land." We hold that as used in chapter 87.03 RCW (but not as used in RCW 87.84.070), "land" includes improvements.

_____
Siddoway, C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Pennell, J.

30